714 So.2d 647 (1998)
ALLSTATE INSURANCE COMPANY, Appellant,
v.
Lillian SILOW, Robert Scott Lemon and Brenda Lemon d/b/a Scott's Professional Services and Mario Valasquez, Appellees.
No. 97-3301.
District Court of Appeal of Florida, Fourth District.
July 29, 1998.
*648 Richard A. Sherman and Rosemary B. Wilder of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and Keith Bregoff of Law Office of Lawrence J. Signori, West Palm Beach, for appellant.
Matthew D. Levy of A Law Office of Kenneth N. Metnick & Associates, P.A., Delray Beach, for Appellee-Lillian Silow.
TAYLOR, Judge.
Appellant/Defendant, Allstate Insurance Company (Allstate), appeals a final judgment and an order granting Appellee/Plaintiff Lillian Silow's motion to strike Allstate's offer of judgment in the amount of $100 to settle an uninsured motorist claim. Allstate contends that the trial court erred in striking its offer upon a determination of bad faith and disallowing an award of attorney's fees and costs. We agree and reverse the order.
On June 21, 1995, Silow was a passenger in a vehicle struck from behind by a truck driven by Mario Valasquez and owned by Robert and Brenda Lemon and their business, Scott's Professional Services. Silow sued Valasquez, the Lemons, and her uninsured motorist carrier, Allstate. Silow (Plaintiff) alleged in her complaint that since Valasquez was uninsured, she was entitled to recover under her uninsured motorist (UM) policy with Allstate. The Lemons had $10,000 in primary insurance coverage with Allstate. Plaintiff had $10,000 in PIP coverage and an additional $10,000 in UM coverage with Allstate.
Prior to trial, Allstate propounded interrogatories to plaintiff and reviewed the results of an independent medical examination (IME), which reported a finding of no permanent injury and no causal connection between plaintiff's most significant injuries and the accident. Thereafter, Allstate made an offer of judgment of $100 to settle the UM claim. Plaintiff rejected the offer. After trial, the jury found no permanent injury and awarded plaintiff $17,000$8500 for past medical expenses and $8500 for future medical bills. After a deduction for plaintiff's $10,000 in PIP coverage, the remaining $7,000 was covered by the Lemons' primary insurance. Allstate filed a motion for entitlement to attorney's fees and costs pursuant to section 768.79. In response, Plaintiff moved to strike Allstate's $100 offer of judgment, claiming that the nominal offer was not made in good faith.
At the hearing on plaintiff's motion to strike, plaintiff argued that the $17,000 award, minus the $10,000 in collateral source setoff, left a new verdict of $7,000, which was 70 times more than the $100 offer made by Allstate. As such, plaintiff contended, the offer was not made in good faith and should be deemed invalid. Allstate countered that the net verdict of $7,000 was $3,000 below the $10,000 plateau necessary to trigger UM coverage. According to Allstate, it was not responsible "for dollar one until this net verdict is ten thousand dollars." For that reason, Allstate urged the court to find that the offer was based on a reasonable evaluation of its exposure and demonstrated good faith.
Before ruling on plaintiff's motion to strike the offer of judgment, the trial court first noted that the Florida Supreme Court, in TGI Friday's v. Dvorak, 663 So.2d 606 (Fla. 1995), approved this court's holding in Schmidt v. Fortner, 629 So.2d 1036 (Fla. 4th *649 DCA 1993), wherein we stated that a party has the:
right to attorney's fees when the following prerequisites have been fulfilled: i.e., (1) when a party has served a demand or offer for judgment, and (2) that party has recovered a judgment at least 25 percent more or less than the demand or offer. These are the only elements of the statutory entitlement. No other factor is relevant in determining the question of entitlement. The court is faced with a simple, arithmetic, calculation. How that entitlement gets translated into tangible attorney's fees is covered by the process of an "award."... The right to an award turns only on the difference between the amount of a rejected offer and the amount of a later judgment. It does not depend on whether the offer or the rejection was reasonable ... [Subsection 7(a) ] does indeed allow the court in its discretion to disallow an award of attorney's fees, but only if it determines that a qualifying offer "was not made in good faith."

Id. at 1040-41.
The trial judge acknowledged that Schmidt and Dvorak made it clear that once the statutory prerequisites have been met, the only discretion afforded the court is authority to disallow the attorney fee award when it finds that the offer is not made in good faith. In deciding the good faith issue in this case, the court relied upon our decision in Eagleman v. Eagleman, 673 So.2d 946 (Fla. 4th DCA 1996). There, we held that a $100 offer of judgment was not made in good faith. Eagleman involved a malicious prosecution action that stemmed from a criminal charge of battery filed by a wife against her former husband for allegedly stepping on her foot. After the husband was acquitted by a jury of the battery charge, he sued his former wife for malicious prosecution and sought substantial damages for income loss from time away from his medical practice. The wife filed an offer of judgment for $100 simultaneously with filing her answer and before engaging in any discovery. The husband rejected the offer. After a three-day jury trial, the jury deliberated and deadlocked. Subsequently, the husband voluntarily dismissed the case with prejudice. The wife then filed a motion for attorney's fees based on her $100 offer. We ruled that the trial court did not abuse its discretion in finding bad faith and denying the attorney fee award, because the trial judge "made detailed written and oral findings of fact after the hearing on the motion for attorney's fees" and the record supported his conclusion that "defendant's nominal offer of judgment `was not based on any reasonable foundation, but was made merely to lay the predicate for a future award of attorney's fees and costs.'" Id. at 948. Further, we noted that "[t]he offer bore no reasonable relationship to the amount of damages or realistic assessment of liability. It was instead based on defendant's unilateral belief and subjective determination, before discovery had commenced, that this was a case of no liability" in a case where, in fact, liability was hotly contested. (Emphasis supplied). In our final remarks, we cautioned trial courts to:
view with considerable skepticism nominal offers which bear no reasonable relationship to damages and which are not founded upon a reasonable and realistic assessment of liability. Such nominal offers cannot advance the statutory purpose of encouraging settlement, but instead serve no purpose other than to lay a predicate for a subsequent award of attorney's fees as occurred here.
Id. at 948.
It appears that the trial judge in the present case may have focused more upon the meager amount of the offer, which was identical to the $100 offer in Eagleman, rather than an analysis of whether there existed a reasonable foundation for the offer. The court questioned Allstate how it could "square [its $100 offer] with the fourth district's opinion" in Eagleman? In response, Allstate pointed out that, unlike the offeror in Eagleman, Allstate engaged in considerable discovery before tendering an offer. Additionally, Allstate had a reasonable basis for its offer: an IME report showing that the plaintiff did not sustain a permanent injury due to the accident and that most of her significant injuries were not causally related to the accident; an assessment that the case *650 was worth less than $10,000; $10,000 in available liability coverage in front of any UM coverage; and, ultimately, a jury finding of no permanency and a net verdict of only $7,000 after the collateral source setoff. Allstate said that "We're not arguing that there was a hundred dollar offer but, in actuality, this was a ten thousand one hundred dollar offer." The court, however, rejected Allstate's argument. In its view, the $100 offer was not equivalent to $10,100 (or $20,100 according to the court's computations) and Allstate could not properly take into account the $10,000 PIP coverage and tortfeasor's $10,000 liability insurance in making its offer to settle the case for $100. To do so, in his opinion, would not be "within either the spirit of the statute or the decisional law, especially Eagleman." He found, therefore, that the offer was not made in good faith or designed to settle the lawsuit and granted plaintiff's motion to strike the offer.
A case more directly on point with the case before us was decided by the Second District Court of Appeal in State Farm Mutual Automobile Insurance Co. v. Marko, 695 So.2d 874 (Fla. 2d DCA 1997). There, the court upheld a $1 offer of judgment upon facts and circumstances strikingly similar to those here. Marko was injured in a car accident. The tortfeasor, Mayer, had liability policy limits of $50,000 and Marko had $25,000 in UM coverage with State Farm. Marko sued Mayer and joined State Farm as an additional party defendant. State Farm made an offer of judgment for $1 that was rejected by the plaintiff. Following trial, a jury returned a verdict for Marko within the tortfeasor's policy limits, $30,000. A separate judgment was entered in favor of State Farm and against Marko reflecting the fact that no damages were assessed against State Farm, the UM carrier. Thereafter, State Farm moved for attorney's fees and costs pursuant to section 768.79, Florida Statutes.
In reversing the trial court's denial of attorney's fees and costs, the second district disagreed with the trial court's conclusion that section 768.79 did not apply. The trial court had reasoned that this section applied to a net award, or net judgment, in cases involving a tortfeasor and an uninsured/underinsured carrier, such as State Farm, and that State Farm was not a separate and distinct defendant entitled to make an offer under section 768.79 independent of the tortfeasor. Rather, it simply provided coverage, which was an extension or supplement to the coverage of the tortfeasor, Mayer. Id. at 876. Accordingly, since the verdict amounted to $30,000 and State Farm's offer was $1, the verdict exceeded the amount of the offer and invalidated it.
The second district expressly rejected that position and concluded instead that:
State Farm as the underinsured liability carrier could make an offer of judgment under section 768.79 independent of any offer, or lack of offer, by the tortfeasor, Mayer. Further, State Farm's offer applies only to any potential recovery over and above the tortfeasor's liability coverage of $50,000. If Marko had accepted the State Farm offer of judgment, that amount could not have been used as a setoff against the $30,000 verdict in favor of Marko and against Mayer.
Id. (Emphasis supplied).
Applying this theory to the present case, we note that the $100 offer by Allstate for its UM coverage is not unlike the $1 offer made by State Farm in Marko. Since the offer only applied to any potential recovery in excess of a net verdict within the Lemons' coverage of $10,000, section 768.79 entitles Allstate to an award of attorney's fees and costs, as the $100 offer clearly exceeded plaintiff's zero recovery from Allstate.
Marko notes that the trial court never decided the issue of good faith in its case. However, the second district did, stating:
... The facts of this case, however, clearly demonstrate that State Farm made its offer of judgment based on an evaluation of Marko's case. State Farm believed that Marko's recovery would not exceed the limits of the tortfeasor's liability coverage. The $1 offer of judgment is a statement by State Farm that it believes it has no liability and should not be a part of the litigation. Under these circumstances the good faith of the $1 offer of judgment is demonstrated. Marko elected to join his uninsured/underinsured carrier as a defendant.

*651 He took his chances and lost. Just as Marko attempted to protect his interest, State Farm did the same by making the $1 offer of judgment.
Id. at 876.
Similarly, we believe that under the circumstances of the case before us, Allstate has demonstrated that it made its offer of judgment in good faith. The offer met the Schmidt test in that there was "some reasonable foundation on which to base an offer." Schmidt v. Fortner, 629 So.2d 1036, 1039. A review of the record indicates that Allstate reasonably believed that plaintiff's recovery would not exceed the limits of the Lemons' liability coverage based on an evaluation of the plaintiff's case. See also Weesner v. United Servs. Auto. Ass'n, 711 So.2d 1192 (Fla. 5th DCA 1998)(Error to deny attorney's fees where insurer made $100 offer of judgment based on finding that offer was not made in good faith where insurer had reasonable basis to conclude it had no liability) and Peoples Gas Sys. v. Acme Gas Corp., 689 So.2d 292 (Fla. 3d DCA 1997)(offer of judgment of $2500 to settle case wherein $3.5 million settlement amount sought not determinative of bad faith).
Because we conclude that there was insufficient evidence upon which the court based its finding that the offer of judgment was not made in good faith, we reverse the order denying Allstate an award of attorney's fees and costs under section 768.79. We find that all other issues raised in this appeal are without merit and remand for further proceedings consistent with this opinion.
Reversed and remanded.
WARNER and KLEIN, JJ., concur.